**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Case No: 19 B 24926 |
| | ) | |
| Isidro Alcantar, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | Judge LaShonda A. Hunt |

**MEMORANDUM OPINION**

Even though debtor Isidro Alcantar already received a chapter 7 discharge, he seeks to convert this case to a chapter 13 and fully repay his creditors. This change of heart came about not long after chapter 7 trustee Cindy Johnson commenced an adversary proceeding against Alcantar's wife to recover nearly $140,000 in funds he transferred to her a month before the bankruptcy filing. And so the Trustee objects to the conversion motion on a couple of grounds. First, she asserts that, as a matter of law, chapter 7 debtors cannot convert post-discharge or vacate their discharge orders. Second, she argues that Alcantar is acting in bad faith and trying to circumvent the fraudulent transfer claim against his wife. Alcantar counters that he is eligible to be a chapter 13 debtor, as the Bankruptcy Code does not expressly prohibit conversions after entry of the discharge order.

The parties fully briefed the motion and argued their positions at a hearing held on April 30, 2021. The court concluded that conversion after discharge is generally not allowed unless the debtor also moves to vacate the discharge order under Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024, and advised that a written decision would be forthcoming. For the reasons discussed below, the motion to convert will be denied without prejudice.

1

**Background**

The following facts are taken from the pleadings and bankruptcy dockets, of which this court takes judicial notice.[1]  In January 2019, Alcantar received $159,000 in proceeds from a 2017 worker's compensation case.  But Alcantar never disclosed the existence of that pending lawsuit in his chapter 13 bankruptcy filed in November 2018 and dismissed a month later—Case No. 18bk30923.  Nor did he list the funds received in either the schedules or Statement of Financial Affairs for the instant chapter 7 filed in September 2019—Case No. 19bk24926.  These omissions are surprising, given that the same attorney represented Alcantar in both cases.

At the section 341 meeting of creditors in October 2019, Alcantar admitted to the Trustee that he had not only received the settlement a few months earlier but had also transferred $139,000 to his wife, Yesenia Flores, as payback for loans.  She then used those funds to purchase a house and a vehicle titled in her name only.  In addition, Alcantar stated that he paid unknown amounts to other family members who covered his expenses when he was injured.  After the meeting, the Trustee requested that Alcantar produce information about the transfers and amend his SOFA to include every individual he repaid in the year before the chapter 7 filing.  Alcantar eventually responded to the document request but only after the Trustee sought and the court entered a show cause order against him.  Alcantar has never filed an updated SOFA.  In this bankruptcy case, Alcantar listed $81,655 in unsecured debts and no secured debts.  He received a discharge in March 2020.

Six months later, the Trustee initiated an avoidance action against Flores, seeking to recover the pre-petition transfers.  Flores retained her own counsel, David Lloyd, and filed an

---

[1]  *See Inskeep v. Grosso (In re Fin. Partners)*, 116 B.R. 629, 635 (Bankr. N.D. Ill. 1989).

answer denying the transfers were fraudulent.  Shortly thereafter, Alcantar moved to substitute Lloyd as counsel in his bankruptcy case and filed the pending motion to convert.

Alcantar now claims that he reported receipt of the proceeds and the subsequent purchases by Flores to his prior attorney who either ignored the information or instructed him to not include those details in his bankruptcy filing.  Concerning the reason for the transfer, Alcantar claims that he and Flores agreed she would be responsible for their finances going forward, with property placed in her name alone.  Finally, Alcantar explained that he sought chapter 7 bankruptcy relief after being laid off from his job.  But now, he has returned to full-time work and is able to fund a chapter 13 plan that will repay his discharged debts in full.   However, Alcantar has not moved to vacate the previously entered discharge order.

## JURISDICTION

The court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 151 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois.  This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

## DISCUSSION

At issue here is whether a chapter 7 debtor who has received a discharge but has not had his estate fully administered by the chapter 7 trustee is permitted to convert to a chapter 13 and repay discharged debts through a reorganization plan.  After carefully reviewing the legal authorities and considering the arguments of the parties, the court concludes that Alcantar cannot qualify for conversion unless the discharge order is vacated.

I.    **Converting from chapter 7 to 13**

Section 706(a) of the Code states that a "debtor may convert a case under this chapter to a case under chapter 11, 12, or 13 of this title at any time, if the case has not been converted under

3

section 1112, 1208, or 1307 of this title. Any waiver of the right to convert a case under this subsection is unenforceable." 11 U.S.C. § 706(a). This provision must be read in conjunction with section 706(d), which provides that "[a] case may not be converted to a case under another chapter of this title unless the debtor may be a debtor under such chapter." 11 U.S.C. § 706(d).

Prior to 2007, courts were divided on the related question of whether section 706(a) granted debtors an absolute right to convert a case from chapter 7 to chapter 13, with a majority holding yes. *See e.g., In re Mosby*, 244 B.R. 79, 83-84 (Bankr. E.D. Va. 2000) (collecting cases). A minority restricted the right if conversion would perpetuate an abuse of the system or bad faith existed. *See e.g., In re Lesniak*, 208 B.R. 902, 905 (Bankr. N.D. Ill. 1997) (collecting cases).

The Supreme Court resolved the split in *Marrama v. Citizen's Bank of Massachusetts* and held that the right to convert is indeed limited. 127 S.Ct. 1105 (2007). Because section 706(d) conditions conversion on eligibility, a proposed chapter 13 debtor must meet the threshold requirements of section 109(e) *and* satisfy section 1307(c) governing dismissal or conversion of a case for cause. *Id.* at 1110. Significantly, *Marrama* affirmed that courts possess inherent authority under section 105 to deem individual debtors who engage in fraudulent or bad-faith conduct ineligible for relief afforded under the bankruptcy laws. *Id.* at 1111-1112.

While instructive on the rules governing chapter 7 to 13 conversions generally, *Marrama* does not squarely answer the question presented here—whether post-discharge conversion is permitted. No clear congressional intent can be discerned from the Code, as the statute does not express an absolute prohibition or explicit approval of the procedure. *See In re Young*, 237 F.3d 1168, 1173-1174 (10th Cir. 2001) (upholding conversion after discharge as "entirely proper"). The Seventh Circuit has not ruled directly on the issue. Bankruptcy courts in this district have taken varying approaches in pre-*Marrama* decisions. *Compare In re Lesniak*, 208 B.R. at 906

4

(imposing "a bright-line rule that would prohibit conversions from Chapter 7 to Chapter 13 if the request is made post-discharge") *with In re Starling*, 359 B.R. 901, 911 (Bankr. N.D. Ill. 2007) (holding that conversion is allowed but "the Debtors' Chapter 7 discharge must be set aside if they wish to subject the debts listed in their Chapter 7 case to terms of the Chapter 13 plan").

The Trustee urges the court to follow *Lesniak* and find that entry of the chapter 7 discharge bars conversion to chapter 13.   However, imposing an absolute restriction on every chapter 7 debtor when the Code is silent on the point strikes this court as inconsistent with the premise of *Marrama*.  That is, conversion is appropriate if the debtor satisfies statutory criteria.  In that regard, *Marrama* holding is not only instructive but also applicable to this situation.   Accordingly, to prevail on his request to convert, Alcantar must likewise demonstrate: (1) statutory eligibility; and (2) good faith.   With an intact discharge order and under the circumstances presented here, Alcantar does not meet either of those standards.

## A.  Statutory Eligibility

Under section 706(a), the debtor's case may not have been previously converted from another chapter, a fact not disputed here.  Under section 706(d), the debtor must also be eligible to proceed under chapter 13.  Section 109 establishes who can be a debtor in bankruptcy, generally and under each specific chapter of the Code.  Relevant to the analysis is section 109(e), that defines a chapter 13 debtor as "[o]nly an individual with regular income that owes . . .  noncontingent, liquidated, unsecured debts. . ... 11 U.S.C. § 109(e).  Alcantar filed updated Schedules I and J reflecting regular income to support a plan payment which the Trustee has not contested.  Still, he has not shown that, in light of the discharge order, he actually owes unsecured pre-petition debts.

The Code defines "debt" as "liability on a claim." *See* 11 U.S.C. § 101(12).  And "claim" means "(A) right to payment whether or not such right is reduced to judgment, liquidated,

unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (B) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment. . ..." 11 U.S.C. § 101(5).  But the chapter 7 discharge "discharges the debtor from all debts that arose before the date of the order for relief."  11 U.S.C. § 727(b). More importantly, the discharge order "operates as an injunction against the commencement or continuation of an action … to collect, recover, or offset any such debt as a personal liability of the debtor. . .."  11 U.S.C. § 524(a).  As such, only a debtor who still owes non-discharged debts would qualify for relief under chapter 13.  *See e.g., Lesniak*, 208 B.R. at 905 ("In order to have debts to repay, debts must exist.").

*Starling* involved a factually similar situation with debtors who received their chapter 7 discharge and then sought to convert to a chapter 13 to prevent the trustee from selling their home. 359 B.R. at 904-905.  Prior to filing the case, the debtors obtained an appraisal that reflected no available equity to satisfy claims of unsecured creditors.  *Id*. at 905.   Sometime after entry of the discharge order, the trustee conducted his own appraisal that showed the house was worth more than the debtors believed.  *Id*.  When the trustee moved to sell the property, the debtors responded with a request to convert the case and to have the discharge vacated.  *Id.* at 906.

In considering whether conversion is a viable option post-discharge, *Starling* focused on the language in section 109(e).  The court noted that the discharge already absolved the debtors of personal liability for the same debts they were proposing to repay in a chapter 13 plan.  *Id.* at 909-910.  Consequently, the debtors had to establish that creditors possessed a "right to payment" *from the debtors* in order to demonstrate the existence of "claims" that could be subject to a chapter 13 reorganization plan.  *Id.* at 910 (emphasis added).  That requirement could not be satisfied unless the debtors moved to set aside the discharge order under Fed. R. Civ. P. 60(b).  *Id.*

6

So too Alcantar does not meet the statutory criteria under section 109(e).  His petition listed unsecured debts only, none of which were reaffirmed by agreement with creditors or deemed non-dischargeable by the court.  Entry of the discharge order thus relieved Alcantar of personal liability on those debts.  *See* 11 U.S.C. 524(a)(1); *Johnson v. Home State Bank*, 111 S.Ct. 2150, 2154-2155 (1991).  As a result, those creditors no longer have a right to demand payment directly from Alcantar on their discharged debts.  *See Johnson*, 111 S.Ct. at 2154 (defining a right to payment as "nothing more nor less than an enforceable obligation") (citation omitted). In other words, Alcantar "no longer has any meaningful debts to repay pursuant to a Chapter 13 plan." *Starling*, 359 B.R. at 911 (quoting *In re Marcakis*, 254 B.R. 77, 82 (Bankr. E.D.N.Y. 2000)).  Without debts that survived the discharge and thus remain due and owing by Alcantar to creditors, he is ineligible to be a chapter 13 debtor.

### B.  Good Faith

Overcoming the hurdle of ineligibility under section 109(e) does not save the day here. Conversion would also be denied as an abuse of the bankruptcy process.  Chapter 7 debtors must demonstrate that the resort to chapter 13 is made in good faith.  *Marrama* recognized "the vast majority" of these debtors are "honest but unfortunate" and thus entitled to take full advantage of the chance to repay their debts. 127 S.Ct. at 1111 (citation omitted).  However, certain behavior can lead to a forfeiture of that right.  When that occurs, bankruptcy courts are not hamstrung from entering an "immediate denial of a motion to convert filed under § 706 in lieu of a conversion order that merely postpones the allowance of equivalent relief" and potentially gives debtors "an opportunity to take action prejudicial to creditors." *Id.* at 1111-1112.

Alcantar insists he is the typical chapter 7 debtor whose financial situation has improved such that he is able and willing to repay his debts in full.  On its face, the plan he intends to propose

will be beneficial to creditors and thus unlikely to draw bad-faith objections to confirmation under section 1325(a)(3).  However, the facts here suggest that Alcantar "is not motivated by a desire to repay [his] debts [or] to provide a greater dividend to creditors." *Lesniak*, 208 B.R. at 906.  Instead, this is "simply an attempt by the debtor to evade his obligations under chapter 7. . .." *Mosby*, 244 B.R. at 85.

Tellingly, the request to convert was not made until the Trustee filed suit against Alcantar's wife to recover fraudulent transfers.  Although Alcantar confessed at the section 341 meeting to transferring undisclosed sums to his wife and other friends and family, he then disregarded the Trustee's demand for additional information.  Only the threat of contempt got his attention with respect to part of the request.  To date, his SOFA remains incomplete, lacking any detail about the transfers Alcantar made within a year of filing.

Now that Alcantar is at risk of losing the home his wife intentionally purchased in her name with the transferred settlement proceeds, his defense is to blame the attorney he used for not one, but two bankruptcy filings.  Alcantar's continued lack of transparency throughout the bankruptcy process as well as the timing of the request to convert calls into question the sincerity of his intentions.  As in *Lesniak*, a case involving chapter 7 debtors with multiple discrepancies in their schedules who were trying to save property through a post-discharge conversion, it appears that Alcantar's motivation is "a desire to rid [himself] of the Chapter 7 Trustee and place [his] future in the hands of a Chapter 13 Trustee, who can neither take possession of [his] property nor file a Section 727(d) complaint to revoke discharge." 208 B.R. at 907.  This evidence of bad-faith misconduct justifies denial of the conversion request.[2]

---

[2] The court's assumptions are based on the representations made by counsel in the written pleadings. Alcantar has never submitted sworn statements attesting to his good-faith motives.  He can still request a hearing to present that evidence to the court for consideration but doing so would be pointless if the discharge order is not vacated.

8

## II.  Vacating the Discharge

Conversion cannot be considered here unless the discharge order is first vacated.  Indeed, "conversion is pointless, where, as here, a pre-existing Chapter 7 discharge renders resort to Chapter 13 meaningless and the debtor cannot or will not obtain relief from that order."  *See In re Tardiff*, 145 B.R. 357, 360 (Bankr. D. Me. 1992).  As the court has already explained, a chapter 13 debtor must owe debts.  Otherwise, there is no point in proposing a repayment plan.  It is true that certain debts may survive the bankruptcy discharge. *Johnson*, 111 S.Ct. at 2154.  Whether non-discharged debts could be treated in a converted chapter 13 plan is an open question that need not be resolved since Alcantar's debts were all unsecured and therefore discharged.

Alcantar has not asked to vacate the discharge order in accordance with Fed. R. Civ. P. 60(b), made applicable by Fed. R. Bankr. P. 9024.  Rule 60(b) provides a narrow list of reasons to grant relief from a final judgment, order, or proceeding.  The Seventh Circuit has affirmed that "[f]inal bankruptcy orders can be set aside under Bankruptcy Rule 9024. . . and nothing in the rule indicates that it does not apply to the revocation of discharges."  *Disch v. Rasmussen*, 417 F.3d 769, 778 (7th Cir. 2005).  Until the discharge is undone, Alcantar cannot proceed in a converted chapter 13.  *Starling*, 359 B.R. at 912-913.

## III.  Promoting the Policies of the Code

Finally, Alcantar suggests that allowing him to convert and save his home would further the goals of the bankruptcy process.  True, Congress' stated purpose in establishing chapter 13 was "to enable an individual, under court supervision and protection, to develop and perform under a plan for the repayment of his debts over an extended period of time." *Matter of Smith*, 848 F.2d 813, 816–17 (7th Cir. 1988) (quoting H.R. Rep. No. 95-595, 95th Cong., 1st Sess. 118 (1977), *reprinted in* 1978 U.S. Code Cong. & Admin.News 5963, 6079.).  However, permitting chapter 7

debtors with no pre-petition debts to repay to convert to a chapter 13 would be contrary to that intent.[3]

Alcantar concedes that the discharge injunction relieved him of personal liability for his debts.  He maintains that because the claims remain against the bankruptcy estate, there is no real difference between the Trustee repaying creditors and him standing in the shoes of a chapter 13 trustee to do the same.  The court disagrees.

The chapter 7 trustee is charged with administering a bankruptcy estate comprised of all a debtor's property by "managing liquidation of the estate's assets and distribution of the proceeds." *Law v. Siegel*, 134 S.Ct. 1188, 1192 (2014).  *See also* 11 U.S.C. §§ 704(a)(1), 726, 727.  Chapter 13 trustees, on the other hand, neither collect nor liquidate property. 11 U.S.C. § 1302.  Debtors can certainly choose to voluntarily repay any debt, discharged or not.  *See* 11 U.S.C. § 524(k).  But that does not necessarily mean they are entitled to do so using the protections of  chapter 13, particularly after they have already received the benefit of a chapter 7 discharge.

The Trustee correctly observes that Alcantar is trying to avoid his end of the bargain here by terminating the chapter 7 case before his estate is fully administered.  "A chapter 7 case involves a *quid pro quo*: debtors receive a discharge and in exchange, make full disclosure about their financial affairs, especially their assets, and surrender their nonexempt assets to the trustee" to liquidate and distribute among creditors.  *In re Jeffrey*, 176 B.R. 4, 6 (Bankr. D. Mass. 1994).

---

[3]  In *In re Sidebottom,* an analogous case, the Seventh Circuit held that a debtor could not concurrently maintain a chapter 13 case to address debts that were at issue in a pending chapter 7 proceeding—a "simultaneous chapter 20."  430 F.3d 893, 898-899 (7th Cir. 2007).  The court acknowledged the right of debtors to initiate a chapter 7 case, and then after the case is closed, file a separate chapter 13 case to deal with debts that were not discharged in the preceding chapter 7—a "sequential Chapter 20."  *Id.* at 896-897. Conversion is a distinct process that results in one case, albeit now administered under a different chapter.  *See* 11 U.S.C. § 348(a).  It does not fit neatly into either category.  Nevertheless, since Alcantar's debts were discharged in the chapter 7 case, attempting to repay them in a converted chapter 13 arguably results in a scenario more akin to the prohibited "simultaneous chapter 20."  Indeed, the debtor is essentially maintaining multiple actions with respect to the same debts.

10

Having failed to disclose pre-petition transfers exceeding $150,000 and then reluctantly cooperating with the Trustee's efforts to investigate his only assets of value, Alcantar proposes to repay debts as a last resort. But allowing conversion now "would have the effect of displacing the [t]rustee who was pressing debtor so hard in [chapter] 7" and leave "[t]he fate of the [chapter] 7 fraudulent-transfer actions in [chapter] 13. . . uncertain." *In re Spencer*, 137 B.R. 506, 515 (Bankr. N.D. Okla. 1992).

In chapter 7, the purpose is to allow the honest debtor who is forthcoming and surrenders all non-exempt assets for liquidation to take advantage of an immediate discharge to start anew. Alternatively, in chapter 13, the purpose is to use the "carrot" of a discharge down the road as a means of incentivizing the debtor to complete his plan payments while retaining all his property. Permitting Alcantar to keep the chapter 7 discharge *and* gain control of the action to recover fraudulently-transferred assets from his wife—with no requirement to finish the reorganization— is inconsistent with the goals of either of those chapters.

Alcantar offers to agree in advance to re-conversion rather than dismissal if the chapter 13 case fails. Converting now terminates the chapter 7 case and its estate. *See In re Rigales*, 290 B.R. 401, 407 (Bankr. D. N.M. 2003) ("When a case is converted to Chapter 13 before liquidation, the Chapter 7 estate ceases to exist and becomes instead, the debtor's property in Chapter 13."). If the case is later reconverted to a chapter 7, it would likely be too late at that point for the trustee to pursue those transfers. The debtor would have an intact discharge with no obligation to finish repaying his creditors and the estate would lack recoverable assets for the trustee to liquidate. Again, that would lead to an absurd result with a chapter 7 debtor essentially "regain[ing] his nonexempt property . . . and his debts have all been discharged." *Id.*

11

Moreover, the Code is clear that debtors who receive a chapter 7 discharge are ineligible to receive another discharge within a certain number of years.  *See* 11 U.S.C. §§ 727, 1328. Alcantar should not be able to use conversion to achieve a result—a chapter 13 discharge—that he cannot obtain by filing a sequential chapter 20.  To alleviate concerns about duplicate discharges of the same debts, Alcantar states that he will agree to forego a discharge in the converted chapter 13. Whether admirable or self-serving, the gesture is futile. Waiving a future discharge would not address the very real concern about debtors retaining chapter 7 discharges when they have not fulfilled their end of the bargain.  If any discharge should be forfeited, it is the discharge Alcantar was granted in the chapter 7, not a discharge he has yet to earn for completing plan payments in a chapter 13.

## **CONCLUSION**

For all the foregoing reasons, Alcantar's motion to convert from a chapter 7 case to a chapter 13 will be denied without prejudice.  Alcantar must successfully vacate the discharge order and refute the lack of good faith to establish eligibility for conversion.

ENTER:

Dated:  September 10, 2021

_LaShonda A. Hunt_
Hon. LaShonda A. Hunt
United States Bankruptcy Judge